UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

|  |  |
|---|---|
| TRINIDAD MADRIGAL,<br><br>                Plaintiff,<br><br>     v.<br><br>NANCY BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>                Defendant. | No. CV 17-824-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on February 1, 2017, seeking review of the Commissioner's denial of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before a Magistrate Judge on March 15, 2017, and April 13, 2017. Pursuant to the Court's Order, the parties filed a Joint Stipulation (alternatively "JS") on October 24, 2017, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

## II.

## BACKGROUND

Plaintiff was born on July 17, 1978. [Administrative Record ("AR") at 27, 213, 217.] He has past relevant work experience as a security guard and as a forklift operator. [AR at 27, 56.]

On July 30, 2012, plaintiff filed an application for a period of disability and DIB, and an application for SSI payments, alleging that he has been unable to work since February 23, 2012. [AR at 19, 213, 217.] After his applications were denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 19, 121-23.] A hearing was held on February 23, 2015, at which time plaintiff appeared represented by an attorney, and testified on his own behalf. [AR at 35-62.] A vocational expert ("VE") also testified. [AR at 56-60.] On July 17, 2015, the ALJ issued a decision concluding that plaintiff was not under a disability from February 23, 2012, the alleged onset date, through July 17, 2015, the date of the decision. [AR at 19-29.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 15.] When the Appeals Council denied plaintiff's request for review on January 10, 2017 [AR at 1-6], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)

(same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

**A.   THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability

to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since February 23, 2012, the alleged onset date.[1] [AR at 21.] At step two, the ALJ concluded that plaintiff has the following severe impairments:

> [C]hronic, moderately displaced fractures of the lumbar spine, status post-motor vehicle accident, degenerative joint disease of the left knee, morbid obesity, chronic pain syndrome, and depression and anxiety disorder.

[Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [AR at 22.]

---

[1] The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through September 30, 2017. [AR at 21.]

The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a),[3] as follows:

> [N]o engaging in climbing of ropes/ladders/scaffolds, occasional climbing of stairs, bending, kneeling, stooping, crouching and crawling, with the need to shift positions once every hour while sitting. Also, he can understand, remember and carry out simple instructions with occasional interaction with co-workers/supervisors on an occasional and superficial basis and adjust to changes in a routine work environment consistent with previous limitations.

[AR at 23.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is unable to perform any of his past relevant work as a security guard and as forklift operator. [AR at 27, 56-57.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as an "addresser" (<u>Dictionary of Occupational Titles</u> ("DOT") No. 209.587-010), "document preparer" (DOT No. 249.587-018), "touch-up screen[er], drive PC board" (DOT No. 726.684-110), and "stuffer" (DOT No. 731.685-014). [AR at 28, 57-58.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of February 23, 2012, through July 17, 2015, the date of the decision. [AR at 29.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when he: (1) rejected the opinion of plaintiff's treating

---

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a), 416.967(a).

physician, Jack Tsai, M.D.; and (2) failed at step five to identify a sufficient number of jobs in the national economy that plaintiff could perform. [JS at 4-5.] As set forth below, the Court agrees with plaintiff and remands for further proceedings.

**A.    MEDICAL OPINIONS**

**1.    Legal Standard**

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527.[4] The Ninth Circuit has recently reaffirmed that "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record.'" Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). Thus, "[a]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing Ryan, 528 F.3d at 1198); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan, 528 F.3d at 1198.

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Trevizo, 871 F.3d at 675 (citing Ryan, 528 F.3d

---

[4] The Court notes that for all claims filed on or after March 27, 2017, the Rules in 20 C.F.R. § 404.1520c (not § 404.1527) shall apply. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c. Thus, the new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule. See 20 C.F.R. § 404.1520c; see also 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016). However, the claim in the present case was filed before March 27, 2017, and the Court therefore analyzed plaintiff's claim pursuant to the treating source rule set out herein. See also 20 C.F.R. § 404.1527 (the evaluation of opinion evidence for claims filed prior to March 27, 2017).

at 1198); Carmickle, 533 F.3d at 1164 (citation and internal quotation marks omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Trevizo, 871 F.3d at 675 (citing Ryan, 528 F.3d at 1198); Carmickle, 533 F.3d at 1164 (citation and internal quotation marks omitted); Ryan, 528 F.3d at 1198; Ghanim v. Colvin, 763 F.3d 1154, 1160-61 (9th Cir. 2014); Garrison, 759 F.3d at 1012. When a treating physician's opinion is not controlling, the ALJ should weigh it according to factors such as the nature, extent, and length of the physician-patient working relationship, the frequency of examinations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. Trevizo, 871 F.3d at 676; see 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, 157 F.3d at 725. The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Id.

Although the opinion of a non-examining physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician," Lester, 81 F.3d at 831, state agency physicians are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); Soc. Sec. Ruling ("SSR")[5] 96-6p; Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (the ALJ properly relied "in large part on the DDS physician's assessment" in determining the claimant's RFC and in rejecting the treating doctor's testimony regarding the claimant's functional limitations). Reports of non-examining medical experts "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." Andrews v. Shalala, 53 F.3d 1035,

---

[5] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

### 2. Analysis

On November 26, 2014, Dr. Tsai, plaintiff's treating physician, completed a Physical Capacities Evaluation ("Evaluation"). [AR at 663-69.] In that Evaluation, Dr. Tsai opined that plaintiff's chronic pain syndrome was severe, and he suffers from moderate bilateral knee pain, severe low back pain, and type 2 diabetes. [AR at 664-67.] He based his findings, in part, on examination and test findings showing limitation of motion of the spine, positive straight leg raising, lumbar spinal stenosis, and an inability to ambulate effectively. [AR at 667.] He indicated that plaintiff's functional limitations were caused in part by back fractures with significant pain, which also caused difficulty concentrating or thinking, and that plaintiff's obesity caused significant arthritis in the low back and contributed to his inability to ambulate effectively. [AR at 663, 664, 667, 669.] He opined that plaintiff can work for only 2 hours per day; stand for up to 60 minutes and a total of 2 hours in a workday; sit for up to 2 hours at one time and up to 4 hours in a workday; lift 10 pounds occasionally and 5 pounds frequently; occasionally bend, stoop, balance, work around dangerous equipment, operate a motor vehicle, and tolerate heat, cold, dust, smoke, or fumes; and never climb ladders or stairs. [AR at 665, 668.]

The ALJ stated that between June 2012 and November 2014, plaintiff "received conservative treatment . . . under the care of Dr. Jack Tsai." [AR at 23.] He then noted that Dr. Tsai's records included the following: x-rays that showed "moderately displaced fractures of the spinous processes of L1 and L2; comments that plaintiff was morbidly obese and that his weight was contributing to the pain in his knees; diagnoses with chronic low back pain, chronic pain syndrome, and left knee pain, for which plaintiff was prescribed medications; complaints of persistent pain with difficulty sitting/standing for long periods, and heavy lifting; placement on temporary disability for six months; plaintiff's report that he was unable to lift 10 pounds, stand for more than 15 minutes, or sit for longer than 20 minutes; and plaintiff's admission that Vicodin numbed his pain "for a bit" and Flexeril "helped a lot with the spasm." [AR at 23-24 (citations omitted).]

1 | With respect to Dr. Tsai's Evaluation, the ALJ stated the following: "I give no weight to the overly generous assessment of [plaintiff's] treating doctor, Dr. Tsai, because it is not consistent with his treatment records, noting that he repeats the same thing at every visit." [AR at 25.]

Plaintiff takes issue with the ALJ's characterization of Dr. Tsai's unspecified treatment notes as repetitive and/or as not consistent with his treatment records, as "[e]ven a cursory review of Dr. Tsai's treatment notes shows that this is not true . . . ." [JS at 6.] He notes that the records show that Dr. Tsai treated plaintiff's diabetes, noted fluctuations in blood sugar, increased or decreased plaintiff's medications due to side effects or changes in plaintiff's response to the medications; had access to all of plaintiff's treatment notes from Dr. Tsai's facility, The Children's Clinic (also known as Memorial Care), and planned to review plaintiff's records from St. Mary's (where plaintiff had been recently hospitalized for flu-like symptoms), and from Lakewood Regional Hospital where plaintiff had been admitted after suffering several "severe" panic attacks. [JS at 6 (citing AR at 309-35, 607-36, 637-44), 12 (citing AR at 1097); see also AR at 576-605, 663-69, 670-953, 1044-1188.] Plaintiff submits, therefore, that Dr. Tsai "based his opinion on the totality of [plaintiff's] treatment notes." [JS at 6.] Plaintiff also contends that Dr. Tsai's findings are supported by the x-rays showing multiple fractures in plaintiff's back, in combination with his morbid obesity and knee pain. [JS at 6, 11.] He states that his uncontrolled diabetes, his fractures of the lumbar spine, and his chronic pain syndrome, are not "mild" conditions. [JS at 10-11.] He notes that he has been treated with Norco, Neurontin, and muscle relaxers for his pain, had attended a physical therapy session and also did exercises at home (see, e.g., AR at 1086), and received injections in his back -- all of which "are not conservative treatment." [JS at 11-12 (citations omitted).]

Defendant responds that there are conflicting medical opinions in this case and that "[g]iven Plaintiff's generally mild findings throughout his medical record," the ALJ reasonably gave little weight to Dr. Tsai's opinion. [JS at 7.] Defendant states that in rejecting Dr. Tsai's opinion, the ALJ "cited to the fact that Dr. Tsai's own treatment notes failed to support his opinion of extreme functional limitations." [JS at 9.] According to defendant, although Dr. Tsai's notes "generally documented Plaintiff's allegations of pain, . . . they provided almost nothing in the way of objective findings or examination results." [Id. (citing AR at 359-60, 401-03, 485-86, 551, 571, 626, 721-23,

744-47, 762-65, 1061-64, 1080-85).] Defendant suggests that Dr. Tsai's notes "largely document fairly benign findings, . . . grossly inconsistent with his opinion." [Id.] Defendant also points to the ALJ's discussion of "Plaintiff's mild diagnostic testing results," and Dr. Tsai's "fairly conservative and modest treatment." [JS at 9-10.] Defendant suggests that "a reasonable person would expect to see extreme treatment measures reflected in the record, if Plaintiff were truly as incapable and incapacitated as Dr. Tsai opined," but does not suggest what those "extreme treatment measures" might entail. [JS at 9 (citation omitted).]

Many of defendant's arguments and the conclusions defendant draws from the ALJ's recitation of the evidence were *not* arguments or conclusions made by the ALJ, who merely provided a narrative summary of the evidence. "Long-standing principles of administrative law require [this Court] to review the ALJ's decision based on the reasoning and factual findings offered *by the ALJ* -- not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray, 554 F.3d at 1225-26 (emphasis added; citation omitted). Although the ALJ characterized Dr. Tsai's treatment as "conservative," the Court finds that the ALJ provided only one *reason* for giving "no weight" to Dr. Tsai's opinion: "because it is not consistent with his treatment records, [and] he repeats the same thing at every visit." [JS at 25.]

The Court's review of The Children's Clinic and Memorial Care treatment records, including Dr. Tsai's, do not support the ALJ's reason for giving no weight to Dr. Tsai's opinion. While some of the historical information in each treatment record is carried forward from visit to visit, each treatment record also reflects the reason for that treatment visit, current medications, active problem list, vital signs for that visit, progress notes, patient education, medication side effects, a review of recent laboratory or diagnostic test findings, and information about any new physical/mental health or medication issues.[6] [See, e.g., AR at 309-35, 576-605, 607-36, 637-44,

---

[6] For instance, a May 8, 2015, treatment record cited to by defendant stands in stark contrast to defendant's (and the ALJ's) assertion that Dr. Tsai's notes provided almost nothing in the way of objective findings or examination results. Indeed, as reflected in that note -- and as was also similarly the case with earlier treatment records reviewed by the ALJ [see, e.g., AR at 577-83 (August 30, 2013, treatment note)] -- Dr. Tsai discussed plaintiff's current complaint of severe pain and the fact that after increasing plaintiff's Norco at the last visit, plaintiff is "doing well"; reviewed
(continued...)

663-69, 670-953, 1044-1188.] And, even if the ALJ gave "no weight" to Dr. Tsai's opinion because plaintiff's treatment was "conservative," substantial evidence does not support this reason. "Conservative treatment" has been characterized by the Ninth Circuit as, for example, "treat[ment] with an *over-the-counter pain medication*" (see, e.g., Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (emphasis added); Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (holding that ALJ properly considered the plaintiff's use of "conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset")), or a physician's failure "to prescribe . . . any serious medical treatment for [a claimant's] supposedly excruciating pain." Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir.1999). Here, plaintiff has been prescribed strong prescription pain medications, including the narcotic medication Norco, has received spinal injections, and has been referred for a lap band surgery consultation, treatment that is not necessarily conservative.

Accordingly, to the extent the ALJ found that Dr. Tsai's treatment records were not consistent with his opinion, or that plaintiff's treatment had been conservative, these were not specific and legitimate reasons supported by substantial evidence for giving Dr. Tsai's opinion no weight.

Remand is warranted on this issue.

/

/

---

[6](...continued)
February 2015 MRI results of plaintiff's lumbar and cervical spines [AR at 1081-82]; reviewed plaintiff's current complaints of left knee pain, diabetes issues (e.g., plaintiff reported that he stopped drinking sugared drinks, wakes up with cold sweats), recent panic attacks for which he was treated at a different facility and hospitalized for testing, an asthma medication change, and the fact that plaintiff would like a referral for a lap band surgery consultation (despite the ALJ's assertion that "no doctor has been concerned with [plaintiff's] obesity and . . . has aggressively treated him with various diets, behavioral therapy, exercise programs, bariatric surgery recommendations, etc.") [AR at 1081-85]; and assessed plaintiff's body systems and vital signs and noted "positive for back pain," epigastric pain, allergies, mental health issues, and antalgic gait, among other things. [AR at 1085-86.]

**B.     STEP FIVE**

Plaintiff contends that the ALJ failed to satisfy his burden at step five because he did not identify a sufficient number of jobs in the national economy that plaintiff could perform. [JS at 13.]

Specifically, the ALJ asked the VE whether there were any jobs a person with plaintiff's age (33, defined as a younger individual), education (high school and able to communicate in English), work experience (transferable skills not material to the determination of disability), and RFC limitations (as previously described herein) could perform. [AR at 57.] The VE replied that a hypothetical individual could perform the following occupations: (1) addresser: "about 1,000 jobs" locally and "about 8,100" nationally; (2) document preparer[7]: "about 500 jobs" locally and "about 15,000" nationally; and (3) touch-up screener, PC board: "only about 50 jobs" locally and "about 1,600" nationally. [AR at 57.] When the ALJ asked the VE whether there were any other jobs, the VE replied, "[n]ot in any more numbers than like 1,500 nationally." [Id.] The ALJ stated "[t]hat's fine but there are other jobs? . . . Give me one more . . ." and the VE replied that there was the job of stuffer, with "about 125 jobs" locally and "about 3,600" nationally. [AR at 57.]

An individual is not disabled if he can engage in work that exists in the national economy. Federal regulations require the agency to demonstrate that such jobs exist "in significant numbers either in the region where such individual lives or in *several regions* of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3) (B) (emphasis added); Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 523-25 (9th Cir. 2013). Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where a plaintiff lives are not considered "work which exists in the national economy." 20 C.F.R. § 404.1566(a). The burden of establishing that other work exists

---

[7] Plaintiff asserts that because of his RFC limitation to understanding, remembering, and carrying out simple instructions, he cannot perform the job of "document preparer" because it requires reasoning level 3. [JS at 14 (citing Buck v. Berryhill, 869 F.3d 1040, 1051 (9th Cir. 2017) and Rounds v. Comm'r, 807 F.3d 996, 1003 (9th Cir. 2015)); see also Zavalin v. Colvin, 778 F.3d 842, 846-48 (9th Cir. 2015) (a limitation to simple, routine, or repetitive work is inconsistent with reasoning level 3). Defendant does not challenge plaintiff's assertion. [See generally JS at 16.] The Court agrees that plaintiff is unable to perform the reasoning level three job of document preparer, DOT number 249.587-018, in light of his RFC limitation to simple instructions. Accordingly, this occupation will not be considered in the Court's analysis.

in "significant numbers," either nationally or regionally, lies with defendant. Beltran v. Astrue, 700 F.3d 386, 389-90 (9th Cir. 2012); Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999). The ALJ carries this burden by identifying jobs that exist in significant number within the claimant's region or nationwide. 42 U.S.C. § 423(d)(2)(A).

In the Ninth Circuit, there is no "bright-line rule for what constitutes a 'significant number' of jobs." Beltran, 700 F.3d at 389. Nationwide figures, existing as they do across "several regions" of the country, necessarily require a greater total to constitute a "significant" number. See id. at 389-90; Lemauga v. Berryhill, 686 F. App'x 420, 422 (9th Cir. 2017) (noting that the Ninth Circuit has *never* found 12,600 jobs in the national economy to be a significant number). Similarly, the size of the region -- whether a particular metropolitan area or an entire state -- must factor into the analysis of whether a regional total is sufficient. Compare id. (noting that without knowing the geographic size of the "region" specified, the court cannot meaningfully compare the numbers in that case with others to determine if the number is significant), with Gutierrez, 740 F.3d at 528 (noting that the Ninth Circuit has "upheld a number of jobs less than 2,500 in a *handful of cases*, and in those cases, the regions were smaller than the State of California") (emphasis added). In Lemauga, the Ninth Circuit observed that in evaluating whether regional job numbers are significant, "a comparison to other cases and similarly-sized regions is 'instructive.'" Lemauga, 686 F. App'x at 422 (citing Beltran, 700 F.3d at 389). In Lemauga, however, neither the ALJ nor the VE had specified the size of the region in which the 1,530 available inspector jobs existed. Id. The Ninth Circuit stated that without knowing the geographical size of the region, it could not meaningfully compare the VE's numbers with other cases to assess whether 1,530 jobs was significant. Id. (noting that 1,530 jobs in a metropolitan area is different from 1,530 jobs in an entire state, "especially a state as large as California"). The Ninth Circuit remanded the matter for the ALJ and VE to define the region and to evaluate whether the VE's regional job number is "significant." Id. Thus, it is clear that "significance" depends in large part on whether the identified region is, for instance, a particular metropolitan area, the entire states of Nevada or Oregon, or the whole of Texas or California.

In this case, even aggregating the number of positions available "locally" for the three

identified occupations, there was a total of 1,175 such positions available (1,000 + 50 + 125). The Court notes that the Ninth Circuit has held that 1,266 jobs (just slightly more than the 1,175 found here) in the Los Angeles/Orange County region constituted a significant number of regional positions. Barker v. Sec'y of Health & Human Servs., 882 F.2d 1474, 1479 (9th Cir.1989). In so concluding, the court considered decisions by other circuits that held totals as low as 500 regional jobs significant, although each of those regions was, apparently, a discrete metropolitan area. See id. at 1478-79 (citations omitted). Similarly, the court in Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002), held that 1,300 jobs in the *entire state* of Oregon (and 622,000 nationwide) was significant. Likewise, in Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995), the Ninth Circuit found significant 2,300 jobs regionally, in San Diego County, and 64,000 nationally. Most recently, in Gutierrez, 40 F.3d at 529, the Ninth Circuit deemed 2,500 jobs in California and 25,000 nationwide a "significant" number (although a "close call" at least as to the number of nationwide jobs).

In contrast, the Ninth Circuit found error in an ALJ's finding that 135 regional jobs and 1,680 national jobs constituted a significant number. Beltran, 700 F.3d at 389. Likewise, other district court decisions within the Ninth Circuit align with the foregoing decisions: in Allino v. Colvin, for instance, the court deemed 350 jobs within the state of California and 3,200 nationwide to be insignificant. Allino, 2015 WL 1265049, at *3-5 (N.D. Cal. Mar. 19, 2015); and in Vargas v. Colvin, the court found that 140 regional jobs and 5,500 national jobs failed to carry the ALJ's step five burden. Vargas, 2013 WL 6254784, at *2-4 (C.D. Cal. Dec. 4, 2013).

Plaintiff observes that in the cases cited by defendant for the proposition that 600 or fewer regional jobs have been found to be significant, the ALJ had actually made such a finding. [JS at 17 (citing id.).] In this case, however, the ALJ only made the finding that the number of jobs *nationally* existed in significant numbers[8] [see AR at 28 ("Based on the testimony of the [VE], I conclude that, considering [plaintiff's] age, education, work experience, and [RFC], [he] is capable

---

[8] The ALJ included the 15,000 jobs existing nationally for the occupation of document preparer, which, as discussed, is not a job plaintiff is able to perform given his RFC limitations.

14

of making a successful adjustment to work that exists in significant numbers in the *national* economy.") (emphasis added)]; the ALJ did not make a similar finding that the occupations existed in significant numbers *regionally*. Plaintiff also argues that the cases cited by defendant for the proposition that 1,175 regional jobs is "significant," i.e., two Ninth Circuit opinions finding that 1,000 available regional jobs in *Oregon* (a state with a much smaller population than California) was significant, do not compare "other cases and similarly-sized regions," as instructed by Beltran, 700 F.3d at 389-90. The Court agrees.

Further compounding the problem with the regional analysis in this case, neither the VE nor the ALJ identified the "region" to which the VE was referring -- it could have been Los Angeles itself, Los Angeles County, a two- or three-county area, Southern California generally, all of California, or some other unspecified "region." Thus, in contrast with Barker where 1,266 jobs in the Los Angeles/Orange County region were found to constitute a significant number of regional positions, there is insufficient foundation as to the VE's testimony for the Court to meaningfully compare the "regional" or "local" numbers in this case with other cases, or to otherwise conclude that 1,175 regional jobs is a significant number. Lemauga, 686 F. App'x at 422.

Neither do the national numbers -- 8,100, 1,600, and 3,600 existing positions -- satisfy the statutory requirement for a "significant" number of jobs. First, none of these numbers alone is remotely close to the 25,000 nationwide jobs the Ninth Circuit in Gutierrez found to be (just barely) "significant." Gutierrez, 740 F.3d at 529 (noting that even 25,000 nationwide jobs in one occupation presents a "close call" under the national standard for "significance"). Next, even considering the aggregate total for the three jobs existing in the national economy -- 13,300 -- that number still is significantly less than the 25,000 existing jobs considered by the court in Gutierrez to be a "close call." See also Lemauga, 686 F. App'x at 422 (noting that the Ninth Circuit has never found 12,600 jobs in the national economy to be a significant number). Accordingly, the Court cannot find that 13,300 nationwide jobs represents significant availability.

Based on the foregoing, the ALJ failed to support his decision at step five with substantial evidence that plaintiff can perform work that exists in significant numbers in the national (or some specific regional) economy. Remand is warranted on this issue.

# VI.

# REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Lingenfelter v. Astrue, 504 F.3d 1028, 1041 (9th Cir. 2007); Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ failed to provide specific and legitimate reasons for discounting the opinion of Dr. Tsai, the ALJ on remand shall reassess the medical evidence of record, including the records later submitted by plaintiff to the Appeals Council[9] and not previously

---

[9] Approximately 125 pages of additional medical evidence was submitted by plaintiff to the Appeals Council and made part of the record. [AR at 308, 1002-1125.] The Appeals Council stated that the ALJ decided plaintiff's case through July 17, 2015, and that another 19 pages of medical records plaintiff also submitted to the Appeals Council were dated in September 2015 and, therefore, were "about a later time . . . [and] do[] not affect the decision about whether you were disabled beginning on or before July 17, 2015." [AR at 2.] Under agency regulations, however, the Appeals Council must consider additional evidence that is new, material, and relates to the period on or before the date of the ALJ's decision. See 20 C.F.R. § 404.970(b); Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1232-33 (9th Cir. 2011) (remanding to ALJ where it was apparent from Appeals Council's denial of review that it had not considered plaintiff's additional evidence). New evidence is material if it bears "directly and substantially on the matter in dispute." Luna v. Astrue, 623 F.3d 1032, 1034 (9th Cir. 2010) (quoting Booz v. Sec'y of Health Human Svcs., 734 F.2d 1378, 1380 (9th Cir. 1984) (citation omitted)). Because these 19 pages do not appear to have been made a part of the record, the Court cannot assess whether they shed light on plaintiff's condition(s) prior to July 17, 2015. Because the matter is being remanded for the ALJ to reconsider the medical opinions of record, the Court finds it appropriate for the ALJ on remand to also consider any later-acquired records, not already made part of the Administrative Record, to the extent those records shed light on plaintiff's condition prior to July 17, 2015.

reviewed by the ALJ. [See AR at 308, 987-1125.]. In assessing the medical opinion evidence of record, the ALJ must explain the weight afforded to each opinion and provide legally adequate reasons for any portion of the opinion that the ALJ discounts or rejects, including a legally sufficient explanation for crediting one doctor's opinion over any of the others. In light of the reassessment of the medical record, the ALJ on remand, in accordance with SSR 16-3p, shall reassess plaintiff's subjective symptom allegations, if warranted. Finally, the ALJ shall reassess plaintiff's RFC and determine, at step five, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the regional and national economy that plaintiff can still perform.[10]

**VII.**

**CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: November 21, 2017

_/s/ Paul L. Abrams_
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[10] Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to return to his past relevant work.